```
                IN THE UNITED STATES DISTRICT COURT
                     FOR THE DISTRICT OF KANSAS
```

**ROCKY E. RILEY,**

                 **Plaintiff,**

        **v.**                                            **CASE NO. 18-3148-SAC**

**LT. RYAN DEAL, et al.,**

                 **Defendants.**

## MEMORANDUM AND ORDER

This matter is a civil rights action filed under 42 U.S.C. § 1983. Plaintiff, proceeding pro se and in forma pauperis, brings this action against Lieutenant Ryan Deal and Sergeant Charlotte Westhoff of the Crawford County Jail (CCJ).

After conducting an initial screening of the complaint and receiving an amended complaint, the court directed officials at the CCJ to prepare a report under *Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978). The report was filed on October 27, 2021, and plaintiff filed a response on November 19, 2021. The court has examined the record and enters the following findings and order.

### The *Martinez* report and the response

Since 2016, plaintiff has been booked into the CCJ on six occasions. The present case arose during his incarceration there in 2018.

Plaintiff was booked into the CCJ on May 7, 2018, on several charges. During the intake processing, plaintiff reported that he has leukemia. Intake records show that he did not take any medications. However, on the following day, the CCJ ordered four prescription

medications for plaintiff from Apothecare, the pharmacy at Community Health of SE Kansas in Pittsburg, Kansas. The medications include an oral chemotherapy drug, Gleevac, and two medications for mental health needs. Medications from Apothecare are delivered to the jail in packages providing a two-week supply.

During the period in question, the CCJ distributed medications through a medical cart three to four times per day. It appears that plaintiff received his chemotherapy medication twice a day during the first week of his 2018 detention rather than the prescribed course of one dose per day. Plaintiff did not notify jail authorities of the error, and jail officials discovered the dosing error when the supply of that drug ran out.

Upon learning this, defendant Westhoff notified defendant Deal of the incorrect dosage, and the CCJ contacted Dr. Peng, plaintiff's oncologist. According to the affidavit of defendant Westhoff, Dr. Peng advised CCJ authorities that plaintiff would not be adversely affected by the error. In March 2018, prior to plaintiff's admission to the CCJ, Dr. Peng wrote in his notes that plaintiff had not achieved a "major molecular response" to Gleevac but had not been compliant with the treatment; he also noted that treatment with Gleevac had been interrupted due to plaintiff's elevated liver enzymes. Ex. I, p. 9, Dr. Peng's notes.

Plaintiff was seen by the CCJ's on-site nurse practitioner on May 15, 2018, and he saw Dr. Peng on May 18, 2018, a week ahead of his scheduled appointment.

Plaintiff began receiving the correct dose of Gleevac on May 22, 2018, and continued with that medication until Dr. Peng discontinued it on June 28, 2018, and prescribed a different medication, Sprycel.

Following plaintiff's May 18 appointment with Dr. Peng[1], the CCJ discontinued plaintiff's two mental health medications. On May 22, 2018, plaintiff filed a grievance about the absence of these medications. On approximately June 3, 2018, the CCJ contacted Dr. Peng to ask whether plaintiff could resume taking the two medications. Dr. Peng responded that plaintiff could receive the medications at a lower dosage, and the CCJ provided them at that dose.

Plaintiff saw Dr. Peng on June 15, 2018, and again complained about the interrupted delivery of his mental health medications. Dr. Peng advised plaintiff that he had told CCJ staff to lower the doses to avoid possible drug interactions but had not directed them to eliminate them. On June 15, Dr. Peng wrote notes stating, "Although he has had issues with jail staff providing medication appropriately, I am very suspicious that imatinib is no longer effective for his disease." Ex. J., Dr. Peng's notes, June 15, 2018.

On November 9, 2018, plaintiff again saw Dr. Peng. Dr. Peng found that Sprycel had fewer drug interactions than plaintiff experienced with Gleevac and returned both of his mental health medications to their original levels. The CCJ then began to distribute the mental health medications to plaintiff at the higher dose directed by Dr. Peng.

On December 18, 2018, plaintiff was released from the CCJ. He was again arrested on January 17, 2019. On January 29, 2019, he was transferred to the custody of the Kansas Department of Corrections.

## Discussion

Plaintiff claims that CCJ defendants independently decided to

---

[1] Dr. Peng's notes from that visit include his finding that plaintiff was "doing well in general" but had some right flank pain, possibly associated with a pain killer plaintiff had taken for body aches. Doc. 1, Attach. 2, p. 3.

stop his mental health medications and asserts the decision was an effort to punish him.

Defendants state that plaintiff's mental health medications were stopped based upon their understanding that this was needed to avoid drug interactions with his oral chemotherapy medication after the overdosing. Accordingly, the CCJ stopped the two medications, Seroquel and Remeron, prescribed for mental health conditions on or about May 18, 2018. (Doc. 16, Ex. C., Westhoff affid., par. 16.)

As a pretrial detainee, plaintiff is entitled to constitutionally adequate medical care under the Fourteenth Amendment. *Strain v. Regalado*, 977 F.3d 984, 989 (10th Cir. 2020). Claims of a denial of medical attention are examined under "an analysis identical to that applied in Eighth Amendment cases." *Sawyers v. Norton*, 962 F.3d 1270, 1282 (10th Cir. 2020)(quoting *Burke v. Regalado*, 935 F.3d 960, 992 (10th Cir. 2019)).

The operative question is whether the defendant officials have shown deliberate indifference to a serious medical need. This analysis requires "a two-pronged inquiry, comprised of an objective and subjective component." *Self v. Crum*, 439 F.3d 1227, 1330 (10th Cir. 2006). The objective component requires "that the pain or deprivation be sufficiently serious," and the subjective component requires that the defendant act "with a sufficiently culpable state of mind." *Miller v. Glanz*, 948 F.2d 1562, 1569 (10th Cir. 1991). The U.S. Supreme Court has explained that the subjective component is met only when the defendant official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*,

511 U.S. 825, 837 (1994).

Plaintiff filed numerous grievances throughout his detention at the CCJ, but he has not provided any evidence sufficient to show that the named defendants acted with deliberate indifference when they failed to give him the correct medication.

Instead, the grievance materials and responses support a finding that the CCJ staff believed, erroneously, that Dr. Peng had discontinued plaintiff's mental health medications. *See* Ex. L., p. 14, grievance dated June 3, 2018 ("Got my mental health meds back can I please have them back to where they was a week and a half ago….") and pp. 14-15[2] ("NO ROCKY WE DID NOT REFUSED TO GIVE YOU MEDICAL TREATMENT YOU ASKED TO HAVE YOUR MEDICATION RAISED, BUT THE ONCOLOGIST SAID YOU COULD HAVE YOUR SEROQUEL AND MIRTAZAPINE BACK, BUT AT THOSE DOSES AND WE CAN GO AGAINST YOUR ONCOLOGIST.").

As stated, the CCJ contacted Dr. Peng on June 3, 2018, to inquire whether plaintiff could resume taking the two medications. Dr. Peng agreed that plaintiff could receive the medications at lower doses than previously prescribed, and the CCJ began to distribute them to plaintiff. *Id*. at par. 17. Likewise, when Dr. Peng returned the dosage of Seroquel to its original level on November 9, 2018, the CCJ began to distribute the medication at that level. *Id*. at par. 19.

The record shows the defendants responded quickly to Dr. Peng's adjustments to the plaintiff's mental health medications, and the responses prepared to plaintiff's grievances suggest their misunderstanding led to the brief cessation of those medications.

After careful consideration of the report and attachments and

---

[2] The pages on which the grievances and responses are printed are somewhat out of order. The beginning of the response appears at the bottom of page 15 and continues at the top of page 14.

plaintiff's response, the court finds that plaintiff has failed to state a claim for relief under the governing deliberate indifference standard concerning either his cancer care or his mental health medications. While it is clear there were errors associated with plaintiff's medical care at the CCJ, it is settled that "a finding of deliberate indifference requires more than a showing of mere negligence." *Farmer*, 511 U.S. at 825; *see also Estelle v. Gamble*, 429 U.S. 97, 106 (1976)("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.") and *Simmons v. Moreno*, No. 1:20-cv-520 (TSE/JFA), 2021 WL 2930072, at *7 (E.D. Va. July 12, 2021) (a negligent change in medication is insufficient to rise to level of deliberate indifference).

Because plaintiff has not presented a plausible claim of deliberate indifference, the court concludes this matter must be dismissed for failure to state a claim for relief.

IT IS, THEREFORE, BY THE COURT ORDERED this matter is dismissed for failure to state a claim for relief.

DATED: This 1st day of February, 2022, at Topeka, Kansas.

S/ Sam A. Crow

SAM A. CROW
U.S. Senior District Judge